Loanzon Law Firm
Tristan C. Loanzon
386 Park Avenue South, Suite 1914
New York, New York 10016
(212) 760-1515
*Attorney for Plaintiff Grow Up Japan, Inc.*

MAY 2 1 2007

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GROW UP JAPAN, INC.,<br><br>                    Plaintiff,<br><br>        -against-<br><br>KO YOSHIDA and KO COMPUTER, INC.,<br><br>                    Defendants. | 2007 Civ. _____<br><br><br>COMPLAINT |

Plaintiff Grow Up Japan, Inc., by its attorney Loanzon Law Firm, for its complaint against Defendants Ko Yoshida and Ko Computer, Inc., alleges as follows:

### Nature of Action

1.   This action arose when Ko Yoshida ("Yoshida") hatched a scheme to defraud his employer, Grow Up Japan, Inc., by appropriating corporate assets for purely personal gain, false reporting, interfering with the company's contracts with third parties, and unfairly competing by using company proprietary assets. Yoshida was the shop manager of Grow Up Japan's computer store User's Side, which was located on 431 Fifth Avenue, New York City. Yoshida was also the CEO of Grow Up Japan, and as such responsible for overseeing two other Grow Up

Japan stores in Los Angeles and San Jose, California.  Yoshida treated corporate properties as his own personal property.

2.    In 2004, while the CEO of Grow Up Japan, Yoshida incorporated his own company, Ko Computer, Inc. and a corresponding internet domain name.  At the same time, he was continuing to drive Grow Up Japan and User's Side to insolvency. He succeeded when User's Side had to shut down in 2005.

3.    When Grow Up Japan finally closed in March 2005 due to financial difficulties, Yoshida "officially" opened Ko Computer at the same location – 431 Fifth Avenue – and used the same equipment and fixtures that were in the store prior to its closing, without ever paying Grow Up Japan for them.

4.    Yoshida entered into a new lease with the landlord of the same office – and this was after he convinced Grow Up Japan to prematurely terminate its lease in March 2005 for 431 Fifth Avenue.  Yoshida handled the termination of the lease on behalf of Grow Up Japan.

5.    Yoshida had incorporated Ko Computer in 2004 – a full year before Grow Up Japan closed shop.  Grow Up Japan is not affiliated with Ko Computer.

6.    Yoshida continued to pay himself salary from Grow Up Japan even after he officially opened Ko Computer.  Yoshida paid himself from March 2005 to end of May 2005, even while operating

2

Ko Computer.  Still based in New York, Yoshida was supposed to be in California operating Grow Up Japan's store in San Jose.

7.    On July 19, 2005, Yoshida officially resigned from Grow Up Japan.

## The Parties, Jurisdiction and Venue

8.    Plaintiff Grow Up Japan, Inc. is a California corporation and has its office located at 655 Saratoga Avenue, San Jose, CA 95129.

9.    Until March 30, 2005, Grow Up Japan conducted business in New York as User's Side, Inc.  User's Side was incorporated in New York in 2001 and had a principal place of business at 431 Fifth Avenue, New York, New York.

10.    After the closing of its store in New York in March 2005, User's Side no longer conducts business in New York.  It is currently listed as "inactive" corporation with the N.Y. Department of State.

11.    Defendant Ko Computer, Inc. is an active New York corporation with its principal place of business at 431 Fifth Avenue, 2nd Floor, New York, NY 10016.

12.    Defendant Ko Yoshida is a resident of New York and resides at 201 50th Avenue, Apartment 29F, Long Island City, NY 11101.  Yoshida is the President and Chief Executive Officer of Ko Computer.

13.  Yoshida was the CEO of Grow Up Japan.

14.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 (diversity).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) (venue).

<u>**Allegations Common to All Claims**</u>

15.  Grow Up Japan sells personal computers and other electronic items catered to Japanese customers.  It formed an entity called User's Side to manage Grow Up Japan's three stores in San Jose, Los Angeles, and New York City.

16.  The New York store owned by Grow Up Japan was called "User's Side."

17.  In September 2001, Yoshida was hired as the shop manager for User's Side.  Yoshida was also appointed as Grow Up Japan Director.

18.  Grow Up Japan also signed a lease for an apartment in which Yoshida would be allowed to live rent-free as part of his total compensation.  The lease was signed in September 2002.

19.  In April 2003, Yoshida became the CEO of Grow Up Japan after the retirement of the former CEO.  Along with his new duties, Yoshida continued to be the shop manager of User's Side.

4

Termination of 431 Fifth Avenue Lease Agreement

20.  In May 2001, Grow Up Japan (doing business as User's Side) entered a five-year lease for the store located at 431 Fifth Avenue, 2nd Floor, New York, New York.

21.  In July 2001, Grow Up Japan signed the lease agreement with 431 Fifth Avenue Association ("431 Lease Agreement").

22.  Upon information and belief, in July 2003, Yoshida canceled the 431 Lease Agreement on behalf of Grow Up Japan without notifying the company.  Yoshida paid from Grow Up Japan's bank account a penalty for the early termination.

23.  Grow Up Japan was not informed of this cancellation and termination payment until late 2006.

24.  Upon information and belief, after canceling the lease of Grow Up Japan, Yoshida — for his own personal purpose — entered a lease for the same space and office in August 2003.

25.  Yoshida however managed to conceal the 2003 lease cancellation from Grow Up Japan.

26.  In 2004, User's Side experienced a slow down in growth and financial difficulties.

27.  The slow down was a result of Yoshida's plan early on to drive User's Side to unprofitability and appropriate the company's assets in the event of User's Side's closing.

5

28.  While Yoshida was the CEO of Grow Up Japan and manager of User's Side, he incorporated a different company under his name - Ko Computer, Inc.

29.  Ko Computer was incorporated with the N.Y. Department of State on February 2, 2004.  Ko Computer was not affiliated with Grow Up Japan.

30.  On February 14, 2004, in furtherance of his fraudulent scheme, Yoshida affected the registration of the domain name kocomputer.com.  The domain name was not registered to or affiliated with Grow Up Japan.

31.  Yoshida's incorporation of Ko Computer and registration of the domain name were not part of his duties as User's Side manager or Grow Up Japan CEO.

32.  Rather, they were part of Yoshida's effort to defraud Grow Up Japan and convert company assets to his own.


Second "Termination" of 431 Lease Agreement in 2005

33.  In November 2004, Yoshida communicated with Grow Up Japan's President, Toshihiro Kobayashi ("Kobayashi"), stating that the lease for 431 Fifth Avenue store should be terminated because of User's Side's financial situation.

34.  Upon information and belief, Yoshida had already canceled the 431 Lease Agreement in 2003 (see id. ¶¶ 20-25), and

that the present lease for 431 Fifth Avenue was already under Yoshida or Ko Computer's name.

35.  While Yoshida concealed the 2003 termination of the 431 Lease Agreement, he needed to create a "cover story" in 2004 so that Grow Up Japan will not discover the already-terminated lease, and the fact that Ko Computer is now the lessee.

36.  Grow Up Japan did not discover Yoshida's 2003 termination of the lease until end of 2006.

37.  Beginning in 2004, Yoshida misrepresented the need for the termination agreement, and its terms to Grow Up Japan.

38.  Yoshida emailed Mr. Kobayashi that the store was "struggling."

39.  The cancellation of the 431 Lease Agreement was part of Yoshida's plan to close User's Side and open his company, Ko Computer, at the same location.

40.  Grow Up Japan went along with Yoshida's proposal based on his reports and statements to the company.

41.  Grow Up Japan decided to close User's Side and consolidate operations in San Jose, California.

42.  To terminate the lease, Grow Up Japan had to forfeit all rights under the lease and pay a penalty of $12,230.08.  The lease was to be terminated at the end of February 2005.

43. Using Grow Up Japan's bank account, Yoshida wrote the check for $12,230.08 to 431 Fifth Avenue in January 2005.

44. Yoshida also wrote a check from Grow Up Japan's bank account for $16,846.00 for moving expenses related to relocating inventories and furniture from New York to San Jose.

45. Yoshida further wrote a check from Grow Up Japan's bank account for $8,760.00 related to the moving of Yoshida's personal apartment belongings from New York to San Jose.

46. Yoshida however never planned to move to San Jose, especially given the establishment of his company, Ko Computer, in the same 431 Fifth Avenue location in New York.

47. Upon information and belief, the lease to his apartment was never cancelled and remained in effect until February 2005.

48. Yoshida led Grow Up Japan to believe that he was going to San Jose.

49. In January 2005, he requested Mr. Kobayashi to send him money for the development of the San Jose office.  Mr. Kobayashi wired funds to Yoshida in the amount of $30,000.00.

50. For example, in an email dated February 19, 2005, Yoshida wrote to Mr. Kobayashi that he will be leaving for San Jose "no later than March 11."

51. Yoshida never came to San Jose, California in March.

8

Opening of Ko Computer

52.  Upon information and belief, he used the $30,000.00 from Grow Up Japan to set-up his competing store in New York (which is called "Ko Computer").

53.  The New York store, User's Side, closed on March 30, 2005, but Yoshida continued to be on Grow Up Japan's payroll until July 2005.

54.  In an advertisement at a Japanese local newspaper, Ko Computer had its grand opening on April 15, 2005 at the same location occupied by User's Side.

55.  Yoshida was the principal and owner of Ko Computer.

56.  Upon information and belief, Yoshida was already operating Ko Computer prior to April 15, 2005.

57.  Ko Computer's registration with the New York Secretary of State was filed in February 2, 2004.

58.  Ko Computer's office – as reflected in the filing – was in Long Island City, New York.

59.  Yoshida was living in Long Island City, New York.

60.  At the time of the closing of User's Side, it had unsold inventories, equipment, furniture, and other valuables totaling $42,962 (collectively, "inventory").

61.  At first, Yoshida stated to by email to Grow Up Japan that he will be shipping the inventory in the New York store to San Jose.

62.  Upon information and belief, Yoshida instead appropriated the inventory and used them for his new company, Ko Computer, Inc., which took over the same space as the New York store.  Ko Computer used the same inventory.

63.  In April 2005, Yoshida paid himself a monthly salary of $3,681.17 from Grow Up Japan's bank account while operating Ko Computer.

64.  In May 2005, Yoshida paid himself a monthly salary of $3,681.17 from Grow Up Japan's bank account while operating Ko Computer.

65.  He was no longer entitled to salary from Grow Up Japan because he was, beginning at the latest April 15, 2005, working for Ko Computer.

66.  Yoshida did not officially resign from Grow Up Japan until July 19, 2005 – when he wrote an email to Mr. Kobayashi.

67.  Using information from Grow Up Japan, Yoshida and Ko Computer appropriated even the contract terms and conditions used by User's Side.

68.  Upon information and belief, the current contract used by Ko Computer is identical to that used by User's Side.

69. Even the pages on Ko Computer's website are taken from User's Side former web pages. The coding and internal system scripts – the hidden codes in a webpage – in Ko Computer's and User's Side's websites are identical. Ko Computer wrongly appropriated the coding and internal system scripts without authorization.

## CLAIM ONE
### (FRAUD)

70. Grow Up Japan repeats and realleges paragraphs 1 through 69 as if set forth in full herein.

71. In 2003, Yoshida terminated the lease for User's Side at 431 Fifth Avenue ("431 Lease Agreement") without the knowledge of Grow Up Japan. Yoshida then entered a lease with the same terms and condition on behalf of his newly-formed company, Ko Computer. Ko Computer occupied the same space and used the same fixtures used by User's Side.

72. During the period of Yoshida's employment at User's Side, he was given over $10,000.00 in cash by Grow Up Japan for distribution to the staff as bonus.

73. Yoshida did not distribute the cash to the staff but decided to keep the cash to himself.

74. Yoshida made intentionally false statements to induce Grow Up Japan to give him $10,000.00.

75. Grow Up Japan relied on his statements, and suffered

11

damages as a result.

76.  In another misstatement in 2005, Yoshida represented to Grow Up Japan that he needed to "terminate" the 431 Lease Agreement because of continuing financial difficulties, and that he needs cash in order to do so.

77.  User's Side's financial difficulty was a result of Yoshida's own manipulations, the final goal of which was to operate his own computer store.

78.  In reliance on Yoshida's intentionally false representation, Grow Up Japan permitted Yoshida to write a termination fee check of $12,230.08 to 431 Fifth Avenue.

79.  In reliance on Yoshida's representation, Grow Up Japan wired $30,000.00 to Yoshida to operate Grow Up Japan's store in San Jose.

80.  Yoshida never relocated to San Jose.

81.  Yoshida's statement that the lease had to be terminated in 2005 was false because Yoshida had already terminated it in 2003, and entered a new lease for the same space.

82.  In 2005, the lessor and occupant of 431 Fifth Avenue, 2nd Floor, is Yoshida and Ko Computer.

83.  Yoshida's intention was to shut down User's Side and open his own business, Ko Computer.

12

84.  As a result of Grow Up Japan's reliance on Yoshida's misrepresentations, Grow Up Japan agreed to the closing of User's Side and incurred damages consisting of the early termination fee, cash payment of $40,000.00 to Yoshida, payments of wages and salaries to Yoshida during the time he was operating Ko Computer, lost profits, and loss of good will and inventory (valued then at $42,962.32).

## CLAIM TWO
### (CONVERSION OF CORPORATE ASSETS & COMPUTER RECORDS)

85.  Grow Up Japan repeats and realleges paragraphs 1 through 69 as if set forth in full herein.

86.  During the period of Yoshida's employment at User's Side, he was given over $10,000.00 in cash by Grow Up Japan for distribution to the staff as bonus.

87.  Yoshida did not distribute the cash to the staff but decided to keep the cash to himself.

88.  In January 2005, he requested Mr. Kobayashi to send him money for the development of the San Jose office.

89.  Mr. Kobayashi wired funds to Yoshida in the amount of $30,000.00.

90.  Upon information and belief, Yoshida pocketed the $30,000.00 instead of using it to develop Grow Up Japan's office in San Jose.

91.  At the time of the closing of User's Side in March 2005, User's Side had clear title to removable fixtures, furniture, and inventories valued at $42,962.32 (collectively, "inventory").

92.  Yoshida understood that he needed to account for the inventory and return them or their proceeds to Grow Up Japan.

93.  Instead, Yoshida kept the inventory for the benefit of Ko Computer, or kept the proceeds from their sale.

94.  Grow Up Japan sought the return or the sale proceeds of the inventory.

95.  Yoshida refused to account for them, or simply refused to return them to Grow Up Japan.

96.  As a result of Yoshida's wrongdoing, Grow Up Japan suffered damages in the amount of at least $42,962.32.

97.  Furthermore, Yoshida also converted electronic computer records and data owned by Grow Up Japan.

98.  The electronic assets include what was contained in computers located at User's Side that was appropriated by Yoshida and Ko Computer.

99.  Upon information and belief, Yoshida and Ko Computer are using them to operate their current business.  For example, Ko Computer presently uses form and contracts that contain identical terms and conditions used by User's Side.

14

100. Further, even the web pages on Ko Computer's website are taken from User's Side former web pages. The coding and internal system scripts – the hidden codes in a webpage – in Ko Computer's and User's Side's websites are identical. Ko Computer wrongly appropriated the coding and internal system scripts without authorization.

101. Yoshida and Ko Computer did not have authorization from Grow Up Japan to use the computer records and data.

102. Grow Up Japan had made demands that Yoshida and Ko Computer cease from using Grow Up Japan's computer records and data. Defendants refused to heed the demand.

103. As a result of Yoshida's and Ko Computer's conversion of electronic computer records and data, Grow Up Japan suffered damages in the amount of at least $95,000.00.

### CLAIM THREE
### (ACCOUNTING)

104. Grow Up Japan repeats and realleges paragraphs 1 through 69 as if set forth in full herein.

105. As the former CEO and Director of Grow Up Japan, Yoshida owed a fiduciary duty to Grow Up Japan.

106. As the store manager for User's Side, Yoshida owed a fiduciary duty to Grow Up Japan.

107. Yoshida managed the financial records and corporate books of User's Side.

108. Yoshida breached his fiduciary duty to Grow Up Japan by appropriating the company's inventory, using company's funds as his own, and misrepresenting to the company the truth regarding the lease termination in 2003 and 2005.

109. Yoshida then used Grow Up Japan's assets to operate Ko Computer.

110. Upon information and belief, Yoshida is the only principal and owner of Ko Computer.

111. Yoshida's breach of fiduciary duty and wrongdoing entitle Grow Up Japan to an accounting as against both Yoshida and Ko Computer.

## CLAIM FOUR
### (BREACH OF FIDUCIARY DUTY)

112. Grow Up Japan repeats and realleges paragraphs 1 through 69 as if set forth in full herein.

113. As the former CEO and Director of Grow Up Japan, Yoshida owed a fiduciary duty to Grow Up Japan.

114. As the store manager for User's Side, Yoshida owed a fiduciary duty to Grow Up Japan.

115. Yoshida, with intent or recklessness, breached his fiduciary duty to Grow Up Japan by driving the company to financial insolvency, appropriating the company's inventory, using company's funds as his own, and misrepresenting to the

company the truth regarding the lease termination in 2003 and 2005.

116. Grow Up Japan lost economic opportunities and substantial cash as a direct result of Yoshida's breach, as well as salaries and wages paid to Yoshida during the time of his employment.

117. As a result of Yoshida's breach, Grow Up Japan suffered damages in the amount of at least $400,000.00.

## CLAIM FIVE
### (TORTIOUS INTERFERENCE)

118. Grow Up Japan repeats and realleges paragraphs 1 through 69 as if set forth in full herein.

119. There was a valid lease agreement ("431 Lease Agreement") between User's Side and 431 Fifth Avenue Association, dated May 18, 2001.

120. The 431 Lease Agreement states a term of May 2001 through May 2006.

121. Yoshida knew or should have known the existence of the 431 Lease Agreement.  After all, he was the manager of User's Side and CEO of Grow Up Japan.

122. Through misrepresentations, Yoshida induced Grow Up Japan to terminate early the 431 Lease Agreement.

17

123. Through misrepresentations, Yoshida induced 431 Fifth
Avenue Association to allow the early termination of the 431
Lease Agreement.

124. As a result of Yoshida's intentional tort, Grow Up
Japan suffered damages in the amount of at least $12,230.08,
which was the cash payment to 431 Fifth Avenue Association.

125. As a result of Yoshida's intentional tort, Grow Up
Japan suffered damages in the amount of at least $42,962.32 –
the amount of property loss to Grow Up Japan as a direct result
of Yoshida's inducement of the breach.

**CLAIM SIX**
**(UNFAIR COMPETITION)**

126. Grow Up Japan repeats and realleges paragraphs 1
through 69 as if set forth in full herein.

127. Yoshida established Ko Computer at the same time he
was the manager of User's Side and CEO of Grow Up Japan.

128. By playing both roles, Yoshida committed a grave
breach of fiduciary duty and exhibited bad faith.

129. Ko Computer benefited from Yoshida's unlawful
appropriation of Grow Up Japan's and User's Side's assets, which
include the (a) inventory and furniture from User's Side, (b)
User's Side goodwill and relationship with vendors and
customers, (c) computer and electronic data belonging to User's
Side, and (d) cash payments pocketed by Yoshida.

18

130. As a result of Yoshida's and Ko Computer's actions, Grow Up Japan incurred damages of at least $400,000.00, which includes the loss of (a) inventory and furniture from User's Side, (b) goodwill and relationship with vendors and customers, (c) computer and electronic data belonging to User's Side, (d) cash payments pocketed by Yoshida, (e) wages and salaries paid to Yoshida, and (f) economic opportunities.

131. Without Yoshida's deceitful and uncompetitive actions, User's Side would still be a financially viable business.

### CLAIM SEVEN
### (UNJUST ENRICHMENT)

132. Grow Up Japan repeats and realleges paragraphs 1 through 69 as if set forth in full herein.

133. During the period of Yoshida's employment at User's Side, he was given over $10,000.00 in cash by Grow Up Japan for distribution to the staff as bonus.

134. Yoshida did not distribute the cash to the staff but decided to keep the cash to himself.

135. In January 2005, Mr. Kobayashi wired funds to Yoshida in the amount of $30,000.00.

136. Upon information and belief, Yoshida pocketed the $30,000.00 instead of using it to develop Grow Up Japan's office in San Jose.

19

137. At the time of the closing of User's Side in March 2005, User's Side had clear title to removable fixtures, furniture, and inventories valued at $42,962.32 (collectively, "inventory").

138. Ko Computer and Yoshida kept the inventory for the benefit of Ko Computer, or kept the proceeds from their sale.

139. Grow Up Japan sought the return or the sale proceeds of the inventory.

140. Yoshida refused to account for them, or simply refused to return them to Grow Up Japan.

141. Furthermore, Yoshida and Ko Computer benefited from appropriating electronic assets contained in computers located at User's Side.

142. Grow Up Japan had made demands that Yoshida and Ko Computer return the cash, inventory, and computer records and data.

143. Defendants refused to return the assets demanded by Grow Up Japan, even though they knew or should have known that they had no right to keep them.

144. Under principles of equity and good conscience, Defendants should not be permitted to retain Grow Up Japan's assets.

145. Under principles of equity and good conscience, Defendants should turn over the money to Grow Up Japan, the rightful owner.

146. As a result of Yoshida's and Ko Computer's illegal retention of Grow Up Japan's assets, Grow Up Japan suffered damages in the amount of at least $137,962.32.

**WHEREFORE**, Plaintiff Grow Up Japan Inc. demands that the Court award judgment against Ko Yoshida and Ko Computer:

(a)  On the First Claim for Fraud, in the amount of at least $150,000.00, with costs and disbursements;

(b)  On the Second Claim for Conversion, in the amount of at least $137,962.32 with costs and disbursements;

(c)  On the Third Claim for Accounting, an order of accounting as against Ko Computer and Ko Yoshida;

(d)  On the Fourth Claim for Breach of Fiduciary Duty, in the amount of at least $400,000.00 with costs and disbursements;

(e)  On the Fifth Claim for Tortious Interference, in the amount of at least $55,192.40 with costs and disbursements;

(f)  On the Sixth Claim for Unfair Competition, in the amount of at least $400,000.00 with costs and disbursements;

(g)  On the Seventh Claim for Unjust Enrichment, in the amount of at least $137,962.32 with costs and disbursements;

(h)   Requiring Defendants to pay Grow Up Japan the costs of this action and reasonable attorney's fees; and

(i)   Awarding Grow Up Japan such other and further relief as the Court deems just and proper.

### JURY DEMAND

Grow Up Japan, Inc. demands a trial by jury on all issues in this action that are triable by law.

Dated:    New York, New York
          May 21, 2007

LOANZON LAW FIRM

By: _____
Tristan C. Loanzon
386 Park Avenue South, Suite 1914
New York, New York 10016
(212) 760-1515
*Attorneys for Plaintiff*
   *Grow Up Japan, Inc.*

22